UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

No. 14-2313

_____

UNITED STATES OF AMERICA,
Appellee

v.

ELIZABETH V. TAVARES,
Appellant

_____

**APPELLANT ELIZABETH V. TAVARES' REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTIONS FOR RELEASE PENDING APPEAL**

Contrary to the government's argument, Ms. Tavares' Motion for Release Pending Appeal raises a number of substantial questions which, if decided in her favor on appeal, will likely result in an order for a new trial on all counts. That being the case, this Court should order that she remain on release pending this Court's resolution of her appeal rather than being required to serve the entirety of her sentence before appellate review of her convictions has been completed.[1]

_____

[1] Given the need to file a prompt reply in light of Ms. Tavares' self-surrender date of January 12, 2015, this reply does not respond to all of the government's arguments, as the responses to many of them are already contained in Ms. Tavares' Motion for Release Pending Appeal, on which she continues to rely.

I.     **JUROR QUESTIONING OF WITNESSES.**

The government relies at length on cases which have upheld the practice of juror-initiated questioning in criminal cases – cases which Ms. Tavares acknowledged in her motion – but never addresses the major – and Ms. Tavares will contend, dispositive – differences between those cases and this one in terms of the number and nature of the questions jurors were permitted to ask. Courts have indeed held in other cases far different from this one that permitting jurors to put questions to witnesses is a matter within the discretion of the trial court, *see* Opposition at 12, but that does not mean that the district court did not abuse its discretion in this case. It did, and Ms. Tavares will so contend on appeal.

The government notes that courts have pointed to potential benefits from juror-initiated questioning, Opposition at 13, but, as discussed in Ms. Tavares' motion, numerous decisions, including *Rawlings*, on which the government relies, Opposition at 12-13, and this Court's decisions in *Sutton* and *Cassiere*, have stressed the numerous manifest dangers inherent in the practice. *See* Tavares Motion at 9-13. Permitting juror-initiated questions, the *Rawlings* Court stated, "carries significant risk":

> There are a number of dangers inherent in allowing juror questions: jurors can find themselves removed from their appropriate role as neutral fact-finders; jurors may prematurely evaluate the evidence and adopt a particular position as to the weight of that evidence before considering all the facts; the pace of trial may be delayed; there is a certain awkwardness for lawyers wishing to

> object to juror-inspired questions; and there is a risk of undermining litigation strategies. In light of jurors' lack of knowledge of the rules of evidence, a juror question may be improper or prejudicial. When a court declines to ask a question, the questioning juror may feel that her pursuit of truth has been thwarted by rules she does not understand. Concern has also been expressed over a risk that a sense of camaraderie among jurors may lead them to attach more significance to questions propounded by fellow jurors than those posed by counsel.

*United States v. Rawlings*, 522 F.3d 403, 408 (D.C.Cir. 2008), *quoting United States v. Collins*, 226 F.3d 457, 461-62 (6th Cir. 2000). These concerns, which have been widely expressed by courts considering the issue, are very real and reflect considerably more serious reservations regarding the practice than, as the government would have it, the existence of "a remote theoretical possibility for potential prejudice." Opposition at 24.

This Court did uphold the practice of juror-initiated questioning in *Sutton* and *Cassiere*, *see* Opposition at 14-15,  in which only a small number of juror questions were put to witnesses, but,  in both cases, the Court emphasized the dangers inherent in permitting such questioning. *See* Tavares Motion at 9-10.[2] Nowhere in the government's response does it recognize, much less address, the manifest differences

---

[2] The government also relies on *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512 (4th Cir. 1985), in which 95 juror questions were asked. *See* Opposition at 15. *DeBenedetto* was, however, a civil case, which do not present the same Sixth Amendment concerns as criminal trials. As noted in Ms. Tavares' motion, The American Bar Association's Principles for Juries and Jury Trials, Principle 13(C) (2005), distinguishes between civil and criminal cases in its position on juror-initiated questioning. *See* Tavares Motion at 13 n.7.

between this case and those on which it relies. Not only was the number of questions submitted by the jurors unprecedented in a criminal case, exceeding by a wide margin the number of questions asked in criminal cases which have upheld the practice, but also a large number of the questions crossed the line from "innocuous" or "bland" questions simply seeking clarification of something the witness had already said, *see Cassiere*, 4 F.3d at 1017; *Sutton*, 970 F.2d at 1006-07,[3] to questions aimed at ferreting out additional evidence of defendants' culpability. *See* Tavares Motion at 16-18.

The procedures followed by the district court may have paralleled those outlined in *Cassiere* and *Sutton*, *see* Opposition at 17-19 (although with one major exception, as the district did not include a prophylactic instruction in its final instructions to the jury as recommended in both *Sutton* and *Cassiere* and thus did not, as the government argues, "scrupulously follow" the procedures outlined in *Cassiere* and *Sutton*, Opposition at 19), those measures did not, under the extreme circumstances of this case, prevent serious prejudice to appellants' right to a fair trial.

Regardless of the procedures adopted by the district court to vet juror questions, there must be ample justification for adopting the disfavored

---

[3] In *United States v. Lewin*, 900 F.2d 145, 148 (8th Cir. 1990), on which the government relies, Opposition at 15, the Court noted that the few questions asked were "relatively innocuous; they . . . sought clarification of previous testimony and did not introduce new or unrelated subject matter."

practice in the first instance. To hold otherwise would sanction juror questioning of witnesses in any circumstance, so long as appropriate prophylactic measures are adopted. We cannot accept such a proposition.

*United States v. Ajmal*, 67 F.3d 12, 15 (2d Cir. 1995).

Yes, the trial of trial of this case was lengthy and not without its complexities, *see* Opposition at 18, but that does not justify either the numerosity of the juror questions permitted or the subject matter of many of them, which were designed to delve for additional evidence of corruption in the hiring process and of the defendants' complicity. This was an exceptional, unprecedented case in which the juror-initiated questioning went far beyond that in any criminal case which has approved the practice, both in number and content, and cannot simply be swept aside, as the government seeks to do, by reference to cases which have upheld the practice under circumstances far different from those presented here. As the government recognizes, "whether juror questioning constitutes an abuse of discretion is a factually intense inquiry requiring a case-by-case analysis." Opposition at 24, *quoting United States v. Richardson*, 233 F.3d 1285, 1291 (11th Cir. 2000).[4]

The government contends at length that Ms. Tavares has not shown that she

_____

[4] Contrary to the government's argument, *see* Opposition at 24, Tavares has not argued that this Court and the other circuits which have approved the practice in particular cases were "wrong." Instead, she contends that the district court was wrong to have permitted the practice to the extent it did in this specific case.

was actually prejudiced by the extent and content of the juror questioning permitted. *See* Opposition at 19-25. She has, however, discussed a number of ways in which courts, including this one, have recognized that juror-initiated questioning can prejudice the defendant, has demonstrated that this case presents an extreme exercise of the practice, unprecedented in the annals of criminal jurisprudence addressing the issue (which the government has not contradicted), and has provided the Court with examples of juror questions which support her claim that many of the jurors' questions crossed the line into substantive questioning regarding the defendants' guilt which strayed considerably – and prejudicially – beyond the type of neutral clarification-type questions for which the practice is principally designed. *See* Tavares Motion at 15-16. Ms. Tavares' ability at this juncture to further concretize her assertions of prejudice is hampered by the lack of the trial transcript, but the showing made in her motion establishes a sufficient likelihood of prejudicial impact on the fairness of Ms. Tavares' trial to satisfy the standard for the granting of release pending appeal.

## II.    JURY INSTRUCTION ISSUES.

### A.    The Instructions Seriously Undermined Ms. Tavares' Good Faith Defense and Diluted the Presumption of Innocence.

The government's discussion of this issue entirely misses the mark. The

6

question is not, as the government frames it, whether the district court could permissibly define for the jury what conduct was criminal and what was not. *See* Opposition at 25-26. Of course it could – but that is not what it did. The court did not simply describe for the jury what constituted criminal conduct and what did not but instead added a third category of conduct which was "questionable," *i.e.*, conduct which, while not criminal, was so wrong that one who engaged in it could face sanctions or even be fired. *See* Tavares Motion at 21. The court's embellishments regarding this middle ground of "questionable," but not criminal, conduct did not "assist the jury to understand [the evidence] in light of the applicable legal principles," Opposition at 26, quoting *United States v. Hernandez*, 490 F.3d 81, 84 (1st Cir. 2007). On the contrary, they were both wholly unnecessary to the court's purpose of identifying conduct that was not a crime under federal law and highly prejudicial to Ms. Tavares' defense, severely undermining the jury's ability to fairly consider her good faith defense. *See* Tavares Motion at 22-23.

## B.     Failure to Instruct on Ms. Tavares' Good Faith Defense.

Tavares acknowledged in her motion that this Court has indicated that district courts need not  specifically instruct in the language of good faith *if* the jury is sufficiently instructed regarding the specific intent required for commission of the offense charged. *See* Opposition at 27-28. However, the instructions must nonetheless

"convey the substance of the theory to the jury." *United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991). They did not do so here with specific respect to Ms. Tavares, given the structure of the instructions and their primary focus on codefendant O'Brien. *See* Tavares Motion at 25-26.

### C.    The Instructions Improperly and Unfairly Removed a Key Factual Dispute from the Jury's Consideration.

The district court's instructions on this point expressly told the jury "straight out" that the Manual required merit-based hiring. *See* Tavares Motion at 27. While the court did instruct the jury generally that evidentiary determinations rested with it, *see* Opposition at 30, the jury was not told that what the Manual did or did not expect or contemplate was a matter for it to determine based on the evidence before it.[5] Instead, the court's instruction was framed in terms which the jury would most likely have felt bound to accept as one of the governing principles of the case.

### D.    The Aiding and Abetting Instructions Impermissibly Trivialized the *Actus Reus* Necessary for Conviction on an Aiding and Abetting Theory and Usurped the Function of the Jury.

The question here is not whether the court's examples of acts which would satisfy the *actus reus* "negate[d] or confuse[d] the court's instructions regarding the

---

[5] Once the transcript is available, Tavares will be able to direct the Court to evidence relating to what the Manual meant and how it was applied which will demonstrate that her argument is not predicated on a "fallacy." Opposition at 30.

'act' element" of aiding and abetting liability, Opposition at 31 n.6, but whether the instructions regarding those examples essentially directed a verdict on an element of the offense by telling the jury that conduct in which the evidence showed that Ms. Tavares had engaged was sufficient to support her conviction for aiding and abetting. *See* Tavares Motion at 28-29. The court's insertion of "maybe" does not lessen the prejudicial impact of these instructions, *see* Opposition at 33, given the undisputed evidence that Ms. Tavares did send files for interviews and send out letters (or letters were sent out bearing her stamped signature) as part of her duties as Deputy Commissioner of Probation.

### E.     The Court Erroneously Gave a *Pinkerton* Instruction.

Contrary to the government's argument, nothing in *Salinas v. United States*, 522 U.S. 52 (1997), endorses the use of *Pinkerton* instructions in RICO cases. *See* Opposition at 34-35. The portion of *Salinas* on which the government relies was concerned with a defendant's criminal liability for RICO *conspiracy*. *Salinas* does not even discuss criminal liability for *substantive* offenses by one charged with RICO conspiracy, much less approve the giving of *Pinkerton* instructions in RICO cases.

Tavares has also raised a substantial issue regarding the propriety of giving a *Pinkerton* instruction in mail fraud and aiding and abetting cases because the *Pinkerton* theory of liability permitted the jury to convict Tavares on the substantive

counts based on the less stringent *mens rea* required for conviction of RICO conspiracy instead of requiring the government to satisfy the more stringent *mens rea* requirement for mail fraud and aiding and abetting. *See* Tavares Motion at 30-31. To this important argument, the government offers no response.

## CONCLUSION

For all the reasons set forth herein and those set forth in her Motion for Release Pending Appeal, as well as in codefendant O'Brien's Motion for Release Pending Appeal, Ms. Tavares asks that this Court permit her to remain on release pending this Court's resolution of her appeal.

Respectfully submitted,
By her attorneys,

**/s/ Kimberly Homan**
Kimberly Homan
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-8616 (telephone)
(617) 338-9538 (fax)
homanlaw@aol.com

**/s/ Martin G. Weinberg**
Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-3700 (telephone)
(617) 338-9538 (fax)
owlmgw@att.net

R. Bradford Bailey
Adamo Lanza
Four Longfellow Place, 35th Floor
Boston, Massachusetts 02114
(617) 227-2800 (telephone)
(617) 973-1562 (fax)
bbailey@dennerlaw.com
alanza@dennerlaw.com

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this 7th day of January, 2015, I caused the within Reply to be served on all registered participants through its filing with this Court's CM/ECF system.

**/s/ Martin G. Weinberg**

Martin. G. Weinberg